Filed 12/19/13  Hiatt v. Elite Leather CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HANS HIATT, | |
| Plaintiff and Respondent, | |
| v. | G047977 (Consolidated with G047980) |
| ELITE LEATHER COMPANY et al., | (Super. Ct. No. 30-2011-00467630) |
| Defendants and Appellants. | |
| HUNTINGTON INDUSTRIES, INC., | |
| Plaintiff and Respondent, | (Super. Ct. No. 30-2011-00467625) |
| v. | O P I N I O N |
| ELITE LEATHER COMPANY et al., | |
| Defendants and Appellants. | |

Appeals from judgments of the Superior Court of Orange County, Linda S. Marks, Judge.  Affirmed.

Klinedinst PC, Natalie P. Vance and Leah A. Plaskin; Atkinson Andelson Loya Ruud & Romo and Eugene F. McMenamin, for Defendants and Appellants.

Carico Johnson Toomey, Philip A. Toomey and Anita V. Shah, for Plaintiffs and Respondents.

\*        \*        \*

Defendants Elite Leather Company (Elite) and Michael A. Galardo appeal from identical judgments entered in two related, but unconsolidated lawsuits. The trial court entered the judgments after granting a motion to enforce a written settlement agreement brought by the plaintiffs Hans Hiatt and Huntington Industries, Inc. (Huntington) in the respective actions. (Code Civ. Proc., § 664.6; unless otherwise indicated, all further statutory references are to this code.) Defendants argue the settlement is too uncertain to be enforced, lacks material terms, seeks to bind a nonparty, and that the entry of identical judgments in each action creates the prospect they may suffer double liability. Finding no error, we affirm the judgments.

## FACTS AND PROCEDURAL BACKGROUND

The lawsuits arose from July 2010 agreements whereby Elite agreed to buy the assets of Huntington, formerly known as H.H. Hiatt Furniture Manufacturing Company (Asset Purchase Agreement or APA), and to employ Hans Hiatt, Huntington's president (Employment Agreement). In addition, as part of the consideration for the APA, Hiatt also signed a noncompetition agreement.

In April 2011, Huntington sued Elite and Galardo, Elite's president, stating several causes of action based on the defendants' alleged misrepresentations and breach of the APA. (*Huntington Industries, Inc. v. Elite Leather Company* (Super. Ct. Orange

2

County, 2011, No. 30-2011-00467625).)  According to the second amended complaint, H.H. Hiatt Furniture Manufacturing Company agreed to sell to Elite, its name, trademark, proprietary rights, and goodwill, plus all of the company's equipment, raw materials, and style specifications.  In return, Elite agreed to pay for the raw materials and finished goods and pay Huntington a percentage of the sales of what was described as "Hiatt's styles" to Hiatt's customers for three years and seek to increase sales through displays of Hiatt's styles furniture at shows.  Huntington alleged defendants falsely promised to pay the foregoing consideration merely to obtain Hiatt's customer list and goodwill.

At the same time, Hiatt separately filed suit against defendants alleging they breached his employment agreement with Elite.  (*Hiatt v. Elite Leather Company* (Super. Ct. Orange County, 2011, No. 30-2011-00467630).)  The trial court granted defendants' petition to compel arbitration of Hiatt's action.  The arbitration was scheduled for August 21, 2012.

Shortly before the arbitration, the parties agreed to conduct a mediation with retired Judge Jonathan Cannon.  After a day-long session, the parties and their attorneys signed a two-page document entitled "664.6 Agreement."  The document's introductory paragraph declares:  "The following is a settlement agreement under the provisions of CCP 664.6 in the Litigations referenced in paragraph 1.  The parties anticipate a more definitive agreement to be prepared and executed within ten (10) business days.  Notwithstanding any further definitive agreement, this document is intended to be fully enforceable and may be used by either party in a motion to enforce the terms hereof."

The next paragraph acknowledged none of the parties admitted liability and that each disputed the others' claims.  It was followed by eight numbered paragraphs.  Six of the paragraphs, 1 through 4, 6, and 7, are not in dispute.  They provided:  (1) Dismissal of both lawsuits, except for the court's retention of "jurisdiction to enforce any arbitration award or the terms of any settlement agreement"; (2) cancellation of the then-

3

pending arbitration; (3) Elite's payment of $250,000 to Hiatt, plus a statement that "[a]s a material inducement to Hiatt/Huntington to enter into this agreement, Elite represents that it releases its insurance carrier, CNA, from indemnity on any claims arising under the APA"; (4) modification of the scope and duration of the covenant not to compete; (6) except as noted in the paragraph 4, release of the parties from the covenant not to compete and any claims that it had been breached; and (7) a general release of all claims and damages "[e]xcept for any duties arising under this agreement or any subsequent more definitive agreement."

Paragraph 5, one of the disputed clauses, states: "Forensic Accountant: [¶] a. Elite's carrier CNA shall advance the sum of not more than $25,000 to a mutually selected forensic expert. [¶] b. The parties shall meet and confer with each other and Judge Cannon to (1) select an appropriate expert, (2) select an appropriate methodology for the expert to determine the sum, if any, due and owing to Huntington under the terms of the . . . (APA). [¶] c. The expert report shall be based upon the written documents actually produced by the parties . . . in the Litigation; . . . . [¶] d. The forensic expert shall render a written report to be delivered to all parties and Judge Cannon. Within 30-days of receipt, any party may notify the parties and Judge Cannon that they reject the written report. [¶] e. If a party rejects the report, the matter will proceed to binding arbitration before Judge Cannon. The expert's report shall be presumed correct. It shall be the burden of the party rejecting the report to show by a preponderance of evidence the correct sum, if any, due and owing to Huntington under the terms of the APA. The arbitration shall be pursuant to the rules of the CAA [California Arbitration Act]. The prevailing party in the arbitration shall be entitled to reasonable attorney fees and costs. [¶] f. Any additional arbitration fees shall be shared mutually; provided however, that the arbitrator retains jurisdiction to reallocate; provided further that any fee related to arbitration pursuant to 5(e) shall . . . be resolved under that section."

4

The other disputed clause, paragraph 8, states: "The parties agree to work in good faith to reach a more definitive agreement, and agree to execute such an agreement. If one or more terms cannot be reasonably agreed-to, the matter shall be submitted to Judge Cannon for resolution."

On August 21, plaintiffs' counsel sent defendants' attorney an e-mail concerning selection of the accountant and a "method of calculating damages." The next day, defendants' attorney e-mailed the following response: "There is no 'damages' calculation involved here. Damages were all included in the lump sum settlement amount. The audit contemplates a simple, green eye shade inventory count. Book value is your client's established book value. [¶] The procedure contemplated is simply counting ('auditing') the amount of Hiatt inventory of both finished and unfinished goods consumed by Elite for which Hiatt is entitled to reimbursement under the APA, minus payments made. [¶] Unless we have your explicit acknowledgement on this fundamental matter, [w]e will consider the settlement null and void for failure of a meeting of the minds on a core settlement provision. . . ." (Bold omitted.)

Two days later, the parties held a telephone conference with Judge Cannon. Plaintiffs claim both parties agreed to provide Judge Cannon with the names of their proposed accounting experts by August 28. Defendants disputed this point. Plaintiffs timely submitted the names of three experts to Judge Cannon, but defendants failed to do so. Instead, defense counsel sent a letter to plaintiffs and Judge Cannon repudiating the settlement agreement and asserting "it is plain that the Settlement Agreement was either the product of mutual mistake, wherein the parties failed to reach a meeting of the minds on key terms, or else the settlement is fatally uncertain and is therefore an unenforceable 'agreement to agree.'"

Hiatt filed a motion for judgment to enforce the settlement in the employment contract action. The trial court granted the motion.

5

In a minute order the court made the following findings: "Both parties participated equally in the drafting of the agreement; terms were read aloud by plaintiff's counsel with both plaintiff's co-counsel and defense counsel and the mediator present. Defense counsel agreed to all terms set forth in the document. Agreement was signed by all parties and approved as to form by counsel for both sides. [¶] . . . [¶] It is undisputed that the parties entered into a written settlement agreement for both this case and the related case and that agreement was signed by all parties and their counsel. Further, the agreement explicitly states, 'this document is intended to be fully enforceable and may be used by either party in a motion to enforce the terms hereof.' [¶] Therefore, the fact that a dispute has arisen as to the interpretation of ¶5 does not preclude enforcement of the agreement. ¶5 by its terms contains a provision for resolving any dispute, along with ¶8 requiring the parties to meet and confer, and if the parties are unable to reasonably agree to submit the matter to Judge Cannon for resolution."

Thereafter, the court entered the identical judgment in each lawsuit, using the caption and case number for Hiatt's employment action and identifying the Huntington action as a related lawsuit. Defendants filed notices of appeal in each case.

DISCUSSION

*1. Introduction*

Section 664.6 provides, "[i]f parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." The statute's purpose is "to provide a summary procedure for

6

specifically enforcing a settlement contract without the need for a new lawsuit." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809.)

"The trial court's factual findings on a motion to enforce a settlement under section 664.6 'are subject to limited appellate review and will not be disturbed if supported by substantial evidence.' [Citation.]" (*Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1253.) Here, the record supports the trial court's findings that the parties jointly participated in negotiating a written settlement, and that they, along with their attorneys, signed the agreement. Nonetheless, "[w]e review the trial court's ruling on a section 664.6 motion de novo for errors of law." (*Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.* (2002) 103 Cal.App.4th 30, 35.)

## 2. *Enforceability of the Parties' Settlement*

Defendants' first argument is that the settlement agreement constituted an unenforceable agreement to agree. They claim its provision that the parties jointly choose an expert and methodology to determine what was owed under the APA never occurred and the settlement agreement did not contain a mechanism by which the mediator could resolve a dispute over these terms.

We conclude this contention lacks merit. "A settlement is enforceable under section 664.6 only if the parties agreed to all material settlement terms." (*Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1182, fn. omitted; see also *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1301.) "Because this is a legal question we review it de novo. [Citation.]" (*Provost v. Regents of University of California, supra,* 201 Cal.App.4th at p. 1301.)

"A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts. [Citation.]" (*Weddington Productions, Inc. v. Flick, supra,* 60 Cal.App.4th at p. 810.) "'A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time

7

of contracting, so far as the same is ascertainable and lawful.' (Civ. Code, § 1636.) When interpreting a written contract, we generally ascertain the intention of the parties from the writing alone, if possible. (Civ. Code, § 1639.)" (*Owens v. County of Los Angeles* (2013) 220 Cal.App.4th 107, 118.) "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) "A contract . . . 'may [also] be explained by reference to the circumstances under which it was made, and the matter to which it relates.' (Civ. Code, § 1647.)" (*Owens v. County of Los Angeles, supra,* 220 Cal.App.4th at p. 118.)

The settlement agreement is intended to resolve issues arising from two related, but separate lawsuits. One action involved Hiatt's assertion Elite and Galardo breached his employment contract. The second action was Huntington's claim against the same parties for allegedly failing to pay all of the consideration due under the terms of the asset purchase agreement. The parties agreed to resolve Hiatt's action by Elite paying Hiatt a sum of money and modifying the covenant not to compete without either side admitting any liability or wrongdoing. Resolution of the asset purchase agreement is to be accomplished through a two-step process. First, the parties, along with Judge Cannon, agreed to choose a forensic accountant and methodology to determine whether there are additional sums owed under the asset purchase agreement and, if so, how much. Second, in the event either party disagreed with the accountant's conclusion, the parties would resolve the issue through binding arbitration before Judge Cannon.

The settlement agreement declares the parties' intent to draft a more "definitive agreement," but it also states "this document is intended to be fully enforceable." "Where the writing at issue shows 'no more than an intent to further reduce the informal writing to a more formal one' the failure to follow it with a more formal writing does not negate the existence of the prior contract." (*Harris v. Rudin,*

8

*Richman & Appel* (1999) 74 Cal.App.4th 299, 307.) Thus, here the absence of a more definitive agreement did not negate the existence of an enforceable contract.

Defendants' claim the settlement is void because the parties only agreed to agree in the future on the details of selecting an expert and methodology he or she would employ to determine what, if anything, was still owed under the terms of the asset purchase agreement. We disagree. The general rule is that "'""[t]he law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if [they] can be ascertained . . . .'""" (*Patel v. Liebermensch* (2008) 45 Cal.4th 344, 349.) Courts have upheld the validity of contracts even where the agreement provides a method by which to determine some term of it in the future.

In *Forde v. Vernbro Corp.* (1963) 218 Cal.App.2d 405, the defendant obtained an unlawful detainer judgment for nonpayment of rent against the plaintiff who was both a tenant in the defendant's building and one of its corporate shareholders. The parties agreed the plaintiff would satisfy the unpaid balance of the judgment by surrendering his stock to the defendant in return for which the defendant agreed to pay the plaintiff "the amount of the fair evaluation as agreed by the attorneys hereto less the amount of judgment and costs in the aforementioned lawsuit . . . ." (*Id.* at p. 407.) The attorneys failed to agree on the stock price and after the defendant acquired the plaintiff's shares at an execution sale for the amount of the judgment debt, he sued for breach of contract. The trial court concluded the agreement was unenforceable.

The Court of Appeal reversed, finding it contained "'a practicable, objective method for determining'" the price of the plaintiff's stock. (*Forde v. Vernbro Corp., supra,* 218 Cal.App.2d at p. 408.) "[T]he only reasonable interpretation of the written agreement is that the parties intended that the plaintiff should be bound to sell his shares of stock to the defendant and that the defendant should be obligated to pay to the plaintiff the fair value of that stock, less the unpaid amount due under the judgment," and

9

"[t]he provision that the price should be made specific in terms of money by the attorneys for the parties was clearly not intended to mean that either party had discretion to negotiate in a manner inconsistent with adherence to the criterion of fair value." (*Id.* at pp. 408-409.)

*Bowers v. Raymond J. Lucia Companies, Inc.* (2012) 206 Cal.App.4th 724, was an action for defamation and related business torts where the parties entered into a written settlement to "participate in a full day mediation" and "[i]f, at the end of that mediation, the[y] . . . have failed to reach an agreement, the Plaintiffs . . . shall provide to the mediator their last and final demand, . . . and the Defendants . . . shall provide to the mediator their last and final offer . . . . The mediator shall then be empowered to set the amount of the judgment . . . by choosing either Plaintiffs' demand or Defendants' offer, such binding mediator judgment to then be entered as a legally enforceable judgment . . . ." (*Id.* at p. 730.) The Court of Appeal rejected a claim the parties' settlement was void for uncertainty. "[T]he parties in this case elaborated on what they meant by the alternative dispute resolution method they chose," and "[t]hus, . . . the agreement in this case is sufficiently certain to be specifically enforceable." (*Id.* at p. 736; see also *Herman v. County of Los Angeles* (2002) 98 Cal.App.4th 484, 488 [contract requiring parties to subsequently "'meet and reach mutual agreement on the placement'" of certain personnel, enforceable; "There is nothing unlawful or even unusual about contracting parties agreeing to cross certain bridges when they are reached"] fn. omitted.)

"Under California law, a contract is enforceable if it is sufficiently definite that a court can ascertain the parties' obligations thereunder and determine whether those obligations have been performed or breached." (*Elite Show Services, Inc. v. Staffpro, Inc.* (2004) 119 Cal.App.4th 263, 268; *Blackburn v. Charnley* (2004) 117 Cal.App.4th 758, 766 ["'The defense of uncertainty has validity only when the uncertainty or incompleteness of the contract prevents the court from knowing what to enforce.'"].)

10

Similar to *Forde*, *Bowers*, and *Herman*, the parties here agreed to a settlement of their litigation that provided any amount Elite owed Huntington under the asset purchase agreement would be determined by an accountant's report, subject to a right of binding arbitration if either side disagreed with the report. Contrary to defendants' assertion the settlement agreement did contain a procedure for resolving any dispute over the details of selecting an accountant and methodology. The settlement required the parties "meet and confer [both] with each other and Judge Cannon" in choosing the accountant and how he or she shall determine what amount, if any, Elite still owes Huntington "under the terms of the asset purchase agreement." The latter quoted phrase expresses the parties' intent to focus on what consideration Elite promised to pay Huntington for acquiring H.H. Hiatt Furniture Company's assets.

Further, like all contracts the settlement agreement contained an implied covenant that the parties would act in good faith in implementing its terms. "There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract. [Citations.] This covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose. [Citations.]" (*Harm v. Frasher* (1960) 181 Cal.App.2d 405, 417.) Thus, defendants' insistence on what their attorney described as a "green eye shade" inventory audit without meeting and conferring with plaintiffs and Judge Cannon failed to comply with their duty "to do everything that the contract presupposes that [they] will do to accomplish the [settlement agreement's] purpose." (*Ibid.*) They could not simply unilaterally declare "the settlement null and void" because they disagreed with opposing counsel's reference to damages in an e-mail.

In addition, as the trial court noted, in the event, the meet and confer process failed to resolve the parties' differences, paragraph 8 stated "[i]f . . . terms cannot

11

be reasonably agreed-to, the matter shall be submitted to Judge Cannon for resolution." Paragraph 8 related to the parties' effort to "reach a more definitive agreement." But we must construe the contract as a whole, "giv[ing] effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) In the event Judge Cannon would be called upon to cast the tie-breaking vote on choosing a forensic accountant or the appropriate methodology, his focus would be on who or what is necessary "to determine the sum, if any, due and owing to Huntington under the terms of the asset purchase agreement . . . ." Thus, the parties' settlement agreement provided at least as much certainty as the contracts upheld in the cases discussed above.

Defendants rely on the decisions in *Weddington Productions, Inc. v. Flick, supra,* 60 Cal.App.4th 793 and *Lindsay v. Lewandowski* (2006) 139 Cal.App.4th 1618 to support their arguments. These cases are distinguishable.

*Weddington* involved litigation between parties in the business of sound editing for the movie industry. During a mediation, they signed a one page document called a "'Deal Point Memorandum.'" (*Weddington Productions, Inc. v. Flick, supra,* 60 Cal.App.4th at p. 799.) In part, the memorandum provided the parties would "'formalize a Licensing Agreement'" and that they agreed "'this settlement is enforceable under CCP 664.6, and reserve[d] jurisdiction in [the private judge] to resolve any dispute that may occur in the documentation of . . . the Licensing Agreement, and in the implementation of the settlement. [The private judge] may administer any process, including fact-finding if necessary, for a full implementation of the settlement.'" (*Id.* at pp. 799-800.) When disputes thereafter arose over the licensing agreement, the plaintiffs filed a motion to enforce the settlement *before the private judge*. This led to several hearings where the private judge selected the final settlement terms and issued a lengthy order enforcing the terms he imposed, which the trial court entered as a judgment. The appellate court reversed. Noting section 664.6 "creates only a summary procedure for specifically enforcing certain types of settlement agreements by converting them into judgments," the

12

Court of Appeal ruled "[n]either a mediator nor a judge may select and impose settlement terms on the authority of section 664.6." (*Id.* at p. 797.)

Unlike *Weddington*, Judge Cannon will only resolve certain contract details in the event the parties cannot mutually agree on them. Even *Weddington* acknowledged "[t]here are occasions in which 'minor matters' in elaborate contracts are left for future agreement. When this occurs, it does not necessarily mean that the entire contract is unenforceable." (*Weddington Productions, Inc. v. Flick, supra,* 60 Cal.App.4th at p. 813.)

In *Lindsay v. Lewandowski, supra,* 139 Cal.App.4th 1618, a mediation resulted in a stipulation for settlement of litigation involving several parties. One clause of the stipulation called for "'binding arbitration'" of one party's claims, while a second clause required "'binding mediation'" if two other parties could not agree on the terms for payment of a sum of money. (*Id.* at p. 1620.) We reversed a judgment entered under section 664.6, concluding "the parties never agreed on a procedure to resolve the payment dispute . . . ." (*Id.* at p. 1622.) "About the only thing that *is* clear is that the parties did not regard binding mediation as the equivalent of arbitration. The stipulation for settlement originally provided for resolution of the Hydro dispute by 'binding mediation,' but 'mediation' is crossed out and 'arbitration' inserted in its place. That indicates the parties *did not* consider binding mediation the equivalent of arbitration. Since there was no agreement on a recognized procedure to resolve the payment term dispute, the stipulation for settlement is unenforceable." (*Id.* at p. 1623.)

Unlike *Lindsay*, the settlement agreement at issue here contains a procedure for how to choose an expert and methodology and what will happen if either party disputes the finding on what, if anything, is still owed under the terms of the previously executed asset purchase agreement. The parties agreed this determination would be made by a forensic accountant employing a particular procedure with the accountant's conclusion subject to binding arbitration if either party rejected it. Further, the parties

13

agreed to confer with each other and Judge Cannon on the selection of the accountant and method of analysis to be used by him or her. Thus, the settlement agreement is not void for uncertainty.

Next, defendants argue "there is no provision for *payment* to Huntington, or resolution of other issues related to the alleged breaches of contract in the event that no party rejects the expert report." Elite's duty to pay Huntington was previously created by the APA. The current settlement agreement merely provides a means by which the parties can determine whether Elite has made full payment and, if not, calculate the amount Elite still owes to Huntington under their previous contract. Clearly, if the accountant's report finds Elite owes Huntington additional sums under the asset purchase agreement, it will be obligated to pay that sum, absent a timely rejection of the report that triggers the binding arbitration clause. As for the purported "breaches of contract," paragraph 7 of the settlement agreement declares the parties released "all claims and damages of any nature whatsoever" other than the "duties arising under this agreement."

Defendants also argue the settlement agreement is unenforceable because it purports to bind its insurer, CNA, even though the insurer never signed the agreement. We find this claim lacking merit for several reasons.

First, the Supreme Court has held that in the context of a settlement under section 664.6, "the term 'party' literally means the party litigant . . . ." (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 583, 586.) Here, all of the parties litigant signed the settlement agreement. CNA, while defendants' insurer, was not a party to the action.

Second, plaintiffs note the record contains evidence CNA had notice of and participated in the mediation where the settlement was reached. They cite premediation e-mails in which plaintiffs' counsel insisted on the presence of "an insurance representative with settlement authority . . . ." Defendants' attorney responded, naming his clients' claims representative and stating that "she will participate via phone" and "looks forward to a productive mediation."

14

Third, it is questionable whether defendants preserved this issue for appeal. (*Critzer v. Enos, supra,* 187 Cal.App.4th at p. 1261 [""appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method""].) As plaintiffs note defendants did not oppose the motion to enter judgment based on the settlement agreement because CNA did not sign it, but only mentioned this claim in an objection to the proposed judgment. There is an exception where "'the issue involves undisputed evidence and raises a pure question of law.'" (*Id.* at p. 1262.) But the evidence reflects CNA knew about the mediation and defendants agreed to include provisions regarding their insurer's participation in the settlement, it is not clear this argument presents solely a legal issue.

Fourth, defendants are in no position to challenge the purported enforcement of the judgment against CNA because they lack standing to assert CNA's rights in this appeal. "Appellants must be parties of record, and their rights or interests must be injuriously affected by the judgment. [Citation.] They may not assert error that injuriously affected only nonappealing coparties. [Citations.]" (*Rebney v. Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1128; see § 902; *Conservatorship of Gregory D.* (2013) 214 Cal.App.4th 62, 67 ["Injurious effect *on another party* is insufficient to give rise to appellate standing."].) CNA could seek to intervene in these actions and challenge the judgments to the extent they affect its interests (*County of Alameda v. Carlson* (1971) 5 Cal.3d 730, 736), but it has not done so.

Defendants' final contention is that the duplicate judgment entered in each action might "subject[ them] to multiple liabilities . . ., multiple enforcement actions and inconsistent rulings." In support of this argument, defendants cite *Wolfson v. Beatty* (1953) 118 Cal.App.2d 392, where the court held that in multiple actions "ordered consolidated for trial, and actually tried together, there should be but one set of findings of fact and conclusions of law and one judgment." (*Id.* at p. 398.) That is not what

15

occurred here. The trial court never consolidated these cases. What's more, the judgment entered in each case employs the Hiatt action case title and identifies the Huntington lawsuit as a related action. Further, as plaintiffs note Hiatt is the plaintiff in one action, while Huntington is the plaintiff in the other. Thus, there is no potential for duplicate liability against defendants.

DISPOSITION

The judgments are affirmed. Respondents shall recover their costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

ARONSON, J.

16